FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
-------------------------------------------------------X
In re:

JOHN DENARO,

                                        Chapter 13

                                        Case No:
                                        07-14772 (MBK)

                        Debtor.
-------------------------------------------------------X

## MEMORANDUM DECISION

APPEARANCES:

Andrew J. Kelly, Esq.
Kelly & Brennan, P.C.
1800 Route 34, Suite 403
Wall, New Jersey 07719
*Attorney for Debtor*

Alan R. Ostrowitz, Esq.
Ostrowitz & Ostrowitz, Esqs.
225 Gordons Corner Road, Suite 1-J
Manalapan, New Jersey 07726
*Attorney for Shore Community Bank*

-----------------------------------------------------------------------------------------------------------------------

**MICHAEL B. KAPLAN, U.S.B.J.**

**I.    INTRODUCTION:**

       This matter comes before the Court upon the motion filed by John Denaro ("Debtor") seeking to expunge Shore Community Bank's ("Shore") proof of claim. A hearing on the Debtor's motion was held on November 27, 2007, at which time the Court asked the parties to file additional briefs with respect to the application of the Rooker-Feldman doctrine, as well as the appropriateness of applying a fair market credit. Shore and the Debtor filed their

supplemental briefs on December 17, 2007 and December 27, 2007, respectively. As set forth below, the Court finds that the Debtor is entitled to a fair market credit equal to the sale price obtained through the foreclosure process.

## II.    JURISDICTION

The court has jurisdiction over this contested matter under 28 U.S.C. §§ 1334(a) and 157(a) and the Standing Order of the United States District Court dated July 10, 1984 referring all bankruptcy cases to the bankruptcy court. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(B). Venue is proper in this Court pursuant to 28 U.S.C. § 1409(a). The following constitutes the Court's findings of fact and conclusions of law as required by Fed. R. Bankr. P. 7052.

## III.   FACTS AND PROCEDURAL HISTORY:

Relevant to the instant motion, the facts are summarized as follows:

1.  On April 5, 2007, the Debtor filed a voluntary petition under Chapter 13 of the Bankruptcy Code.

2.  On April 10, 2007, Shore filed a general unsecured claim ("Claim Number 2" or "Claim") in the amount of $124,137.87.

3.  Shore's claim is based upon a State Court judgment ("State Court Judgment") in the amount of $493,115.13, plus per diem interest in the amount of $113.22, against the Debtor on a promissory note and commercial guaranty, <u>Shore Community Bank v. Triumph Homes, et al.</u>, Superior Court of New Jersey, Law Division, Ocean County, Docket No. OCN-L-969-06.

4.  The underlying State Court action ("State Court Action") between Shore and the Debtor

is based upon a promissory note obligating Triumph Homes, LLC ("Triumph") to repay a loan from Shore, which the Debtor and another party personally guaranteed the repayment of. The property secured in the loan transaction is a 4.83 acre parcel of real estate owned by Triumph at the time of the loan and is located at 25 Crystal Court, Freehold, New Jersey (the "Property"). The Property included a partially constructed residence.

5. The State Court ruled in favor of Shore on September 15, 2006 and entered an Order for Judgment on November 27, 2006.

6. On or about November 29, 2006, Shore served an information subpoena upon John Denaro in order to locate assets that may be subject to levy.

7. On or about January 4, 2007, Shore filed a motion in the State Court requesting an order to enforce litigant's rights.

8. On January 30, 2007, the Debtor requested that an appraisal be obtained on the Property. An appraisal report prepared by Michael White, MAI, State Certified General Appraiser No. RG 00351 found that the "as is" value of the Property including the partially complete structure was $750,000 as of January 30, 2007.

9. On March 16, 2007, the State Court granted Shore's motion to enforce litigant's rights. A final Order with respect to that motion was entered on March 20, 2007.

10. While the State Court Action was pending with respect to the promissory note, Shore was also pursuing a foreclosure action against Triumph in Chancery Division, Monmouth County, Docket No. F-5102-06. On November 6, 2006, the Property was eventually sold at Sheriff's Sale to Shore for a credit bid of $401,000.

11.  On November 7, 2007, the Debtor filed this motion to expunge Shore's claim arguing that based on the appraisal report a fair market value credit of $750,000 should be applied to the State Court Judgment, thus satisfying Shore in full. Shore, however, calculates its Claim after adding certain costs and providing a purported fair market credit of $401,000 in favor of the Debtor based on the foreclosure sale of the property.

**IV.    DISCUSSION:**

First and foremost, the Court must determine whether the issue presented - the availability of a fair market value credit - is barred by the Rooker-Feldman doctrine. In Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280 (2005), the United States Supreme Court re-examined the doctrine and held the following:

> The Rooker- Feldman doctrine, we hold today, is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments. Rooker-Feldman does not otherwise override or supplant preclusion doctrine or augment the circumscribed doctrines that allow federal courts to stay or dismiss proceedings in deference to state-court actions.

Exxon Mobil Corp., 544 U.S. at 284. "Under the Rooker-Feldman doctrine, a district court is precluded from entertaining an action, that is, the federal court lacks subject matter jurisdiction, if the relief requested effectively would reverse a state court decision or void its ruling." Taliaferro v. Darby Township Zoning Bd., 458 F.3d 181, 192 (3d Cir. 2006). "[A] federal action is inextricably intertwined with a state adjudication, and thus barred in federal court under Feldman, '[w]here federal relief can only be predicated upon a conviction that the state court was wrong.'" Parkview Assoc. P'ship v. City of Lebanon, 225 F.3d 321, 325 (3d Cir. 2000)(quoting

Centifanti v. Nix, 865 F.2d 1422, 1430 (3d Cir. 1989).

In the case at bar, Shore argues that Rooker-Feldman, or in the alternative, res judicata and/or collateral estoppel, should apply to the Debtor's argument to expunge Shore's Claim. Shore argues that the Debtor is asserting the very same issue in this Court that it litigated in the State Court Action - that the Debtor may receive an appropriate credit for the fair market value of the Property regardless of the price obtained at Sheriff's Sale. As such, and in light of the State Court Judgment, Shore maintains that the Debtor is now a State Court loser seeking review of alleged inequities caused by the State Court Judgment before the commencement of proceedings in this Court.

While the Court agrees that the general concept of fair market credit was brought before the State Court, the Court finds that it has before it a significantly different set of facts in that the foreclosure and the resultant acquisition of the Property by Shore did not occur until well after the State Court issued its ruling on September 15, 2006. Accordingly, the Debtor's entitlement to a fair market credit had not yet matured at the time of the State Court ruling and did not mature until the Property was acquired by Shore at Sheriff's Sale on November 6, 2006. As the Debtor correctly notes, therefore, there has been no ruling in any forum concerning the applicability of the fair market credit in favor of the Debtor based upon the completion of the State Court foreclosure. As such, the Court finds that the Rooker-Feldman doctrine is inapplicable to the Debtor's motion to expunge.

Furthermore, "[b]oth New Jersey and Federal Law apply res judicata or claim preclusion when three circumstances are present: (1) the judgment in the prior action must be valid, final, and on the merits; (2) the parties in the later action must be identical to or in privity with those in

5

the prior action; and (3) the claim in the later action must grow out of the same transaction or occurrence as the claim in the earlier one." Mattson v. Hawkins (In re Hawkins), 231 B.R. 222, 229 (D.N.J.1999); Hulmes v. Honda Motor Co., 924 F.Supp. 673, 682 n. 12 (D.N.J.1996) (quoting Watkins v. Resorts Int'l Hotel and Casino, Inc., 124 N.J. 398, 412, 591 A.2d 592 (1991)). To determine whether the claim or defense in the subsequent proceeding derives from the same transaction as the claim or defense in the prior proceeding as required by the third prong of the above test, New Jersey courts consider the following four factors:

> (1) whether the acts complained of and the demand for relief are the same (that is, whether the wrong for which redress is sought is the same in both actions) ...; (2) whether the theory of recovery is the same; (3) whether the witnesses and documents necessary at trial are the same (that is, whether the same evidence necessary to maintain the second action would have been sufficient to support the first) ...; and (4) **whether the material facts alleged are the same.**

Culver v. Insurance Co. of North America, 115 N.J. 451, 461-62(1989)(citations omitted).

Similarly, "[i]ssue preclusion, [or collateral estoppel], generally refers to the effect of a prior judgment in foreclosing successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, whether or not the issue arises on the same or a different claim." *See* Restatement (Second) of Judgments §§ 17, 27, pp. 148, 250 (1980); D. Shapiro, Civil Procedure: Preclusion in Civil Actions 32, 46 (2001). As the Third Circuit explained:

> The elements for collateral estoppel are satisfied when: "(1) the issue sought to be precluded [is] the same as that involved in the prior action; (2) that issue [was] actually litigated; (3) it [was] determined by a final and valid judgment; and (4) the determination [was] essential to the prior judgment." [citations omitted]

6

Amtrak v. Pa. PUC, 342 F.3d 242, 252 (3d Cir. 2003).

As previously discussed, because the Debtor's right to a fair market credit had not matured until the completion of the Sheriff's Sale, the facts and circumstances before this Court differ dramatically from what was before the State Court when it issued its September 15, 2006 ruling. Furthermore, while the Court is aware that Shore's motion to enforce litigant's rights was filed and heard after the subject Property was sold to Shore at Sheriff's Sale and, therefore, the Debtor's right to a fair market credit had in fact matured, a judgment was already in place and the sole issue before the State Court at that time was whether the Debtor had violated Shore's rights by not complying with Shore's information subpoena. Clearly, it was not essential for the State Court to take into consideration the availability of a fair market credit when it issued its ruling on Shore's motion to enforce litigant's rights:

> THE COURT: Well all I'm doing is determining whether your client is in viola – is in contempt of court for not answering the informational subpoena. That's all I'm doing here.
>
> ***
>
> THE COURT: Well, whatever. Let's just round it off, 500,000. You proceed – I'm going to order, by the way, your client to answer the subpoena. That's all this is all about, is to answer an informational subpoena.

See Supplemental Certification of Douglas S. Crawford, Exhibit R, Transcript at pp. 9 and 12. Accordingly, the Court is not barred from deciding whether a fair market credit applies based on either principles of res judicata or collateral estoppel.

Finding that the Court is not estopped from deciding the issue at hand, the Court now turns to whether a fair market credit is applicable in this case. In that regard, the Court finds the case Resolution Trust Corp. v. Berman Industries, Inc., 271 N.J. Super. 56 (1993) to be

7

instructive:

> [A] statutory right to a fair market value credit to be given to certain obligors upon notes whose properties are lost through foreclosure. *See* N.J.S.A. 2A:50-3. Plaintiff also recognizes that, notwithstanding the provisions of N.J.S.A. 2A:50-2.3(a), (rendering the fair market value credit inapplicable to debts secured for commercial or business purposes), case law, nevertheless, has extended this credit to primary obligors [or guarantors] in commercial transactions. *See* Citibank, N.A. v. Errico, 251 N.J.Super. 236, 247, 597 A.2d 1091 (App. Div.1991).
>
> \*\*\*
>
> The equitable right to a fair market value credit to prevent a windfall in a deficiency proceeding is well recognized. In 79-83 Thirteenth Avenue Ltd. v. De Marco, 44 N.J. 525, 210 A.2d 401 (1965), our Supreme Court held that a note mortgagor, although precluded from automatic application of the fair value deduction statute with reference to a deficiency, may nonetheless obtain review and relief, including a reduction of the difference between the mortgage debt and the amount realized **from the foreclosure sale**, on an equitable basis. Id. at 535, 210 A.2d 401. In 79-83 Thirteenth Avenue Ltd., the inapplicability of the statutory fair value deduction was due to the then existing statutory distinction between bonds and notes. Id. at 529-30, 210 A.2d 401.
>
> \*\*\*
>
> In Citibank, N.A. v. Errico, supra, 251 N.J.Super. at 247, 597 A.2d 1091, the Appellate Division ruled that "(a)lthough N.J.S.A. 2A:50-2.3 was amended to exempt mortgages secured by notes for business and commercial properties from the fair market credit provision, **[there is] nothing which precludes a court from applying equitable principles to impose a fair market value credit to prevent a windfall where circumstances require equitable relief in the interests of justice.**"

Resolution Trust Corp., 271 N.J. Super. at 63-64 (Emphasis added).

In a subsequent case before the federal district court, Connecticut Gen. Life Ins. Co. v. Punia, 884 F. Supp. 148 (D.N.J. 1995), the issue was whether a fair market credit should be

applied when the plaintiff, who provided financing for the defendant guarantor's numerous real estate investments, successfully bid on the property at issue for $100 at foreclosure sale. Id. Holding that a fair market credit was applicable under equitable principles, the court considered the appraisals submitted by both the guarantor's and the lender's appraisers in making a determination as to what value should be applied. Id. In light of the foregoing, the Court is satisfied that, based on equitable principles, it is not foreclosed from applying a fair market credit in favor of a defendant when a plaintiff sues on a guaranty and forecloses on the property securing a loan.

In determining that a fair market credit is indeed available to the Debtor, the Court must now address what value should be applied. Here, the Debtor argues that the proper credit to be applied is the fair market value of the subject Property, $750,000, which was determined by the Debtor's appraiser. What the Debtor fails to recognize, however, is that "[m]arket value cannot be the criterion of equivalence in the foreclosure-sale context." BFP v. Resolution Trust Corp., 511 U.S. 531, 538 (1994). As the United States Supreme Court noted in BFP:

> "The market value of . . . a piece of property is the price which it might be expected to bring if offered for sale in a fair market; not the price which might be obtained on a sale at public auction or a sale forced by the necessities of the owner, but such a price as would be fixed by negotiation and mutual agreement, after ample time to find a purchaser, as between a vendor who is willing (but not compelled) to sell and a purchaser who desires to buy but is not compelled to take the particular . . . piece of property." Black's Law Dictionary 971 (6th ed. 1990). In short, "fair market value" presumes market conditions that, by definition, simply do not obtain in the context of a forced sale. [citations omitted]

BFP, 511 U.S. at 538-39. At issue before the Supreme Court in BFP was whether "reasonably equivalent value," in the context of fraudulent transfer litigation brought pursuant to 11 U.S.C.

Section 548(a)(1)(B) to recover the value of property transferred by means of a foreclosure sale conducted pursuant to state statute, can mean something less than "actual value." Id. The Petitioner, in BFP, contended that a foreclosure sale conducted in accordance with all state law procedures could be avoided as a fraudulent transfer if the sale produced proceeds which were less than the "actual value" of the property at issue. Id. In contrast, Respondents argued that a prevailing bid at such a sale could constitute "reasonably equivalent value" as long as the sale was non-collusive and conducted in conformance with state law. Id. Ultimately, the Court agreed with Respondents and held that "a fair and proper price, or a 'reasonably equivalent value,' for foreclosed property, is the price in fact received at the foreclosure sale, so long as all the requirements of the State's foreclosure law have been complied with." BFP, 511 U.S. at 546.

 Similar to the U.S. Supreme Court's determination that "reasonably equivalent value" need not be the same as "actual value," this Court concludes that "fair market value" need not be the same as "actual value" for purposes of fixing a fair market credit. The New Jersey Supreme Court, in establishing an equitable right to a fair market credit, intended only to ensure that a foreclosing mortgagee would not receive a windfall by purchasing the property at a foreclosure sale with a minimal credit-bid of $100, while also enjoying the right to pursue the mortgagor/obligor or a third party guarantor for the balance of the indebtedness.

 This Court holds that in employing its equitable powers to grant a fair value credit, the Court may take into account the circumstances of the sale, e.g., the existence of fraud and/or collusion, as well as the adherence to state law rules and procedures. Indeed, probably the most significant factor in this analysis is whether there has been competitive bidding at the foreclosure sale. For instance, in Connecticut Gen., supra, the successful offer at the foreclosure sale was a $100 credit bid by the mortgagee, and thus clearly the market forces were not acting efficiently

to create a fair value for the property at issue. Accordingly, the Connecticut Gen. court was compelled to utilize other methods of valuation - the competing appraisal reports - in order to determine a fair and proper credit. By contrast, and as noted by Shore's counsel, there was in fact active bidding at Sheriff's Sale in this case, thus creating a fair and proper process by which other third party bidders actively sought to purchase the Property:

> MR. OSTROWITZ: We received - - we had - - our client had this up to $401,000. There were other bidders at the sale. Obviously, we did not get it for $100, as in these other cases that were cited.

*See* Supplemental Certification of Douglas S. Crawford, Exhibit R, Transcript at p. 13. In light of Connecticut Gen. and Resolution Trust Corp., therefore, the Court finds that equitable principles dictate that a fair market credit based on the foreclosure auction process is warranted.

In assessing the appropriateness of a fair market value credit, the Court observes that the term "fair" modifies "market value," thus confirming the importance of the process underlying the sale transaction. In this case, the Court is satisfied that a fair and proper price was achieved through the regularly conducted public foreclosure auction and will not thrust itself into the valuation process. There is no evidence to suggest that the foreclosure proceedings were conducted in violation of New Jersey state law. Rather, Shore lawfully submitted its credit bid at the Sheriff's Sale, topping the prices offered by competing bidders, and obtained title to the Property. Simply put, "after-the-fact" judicial re-creation of a market sale, through appraisal testimony and analysis, is not warranted where the circumstances of the sale reveal adherence to state law procedures and competitive third party bidding. Neither the Errico nor Resolution Trust Corp. decisions, considered *supra*, mandate that the fair market credit reflect a value for the property as if it had been marketed under such circumstances and length of time so as to secure the highest and best price. Indeed, the Debtor had such an opportunity for the entire length of

time Triumph Homes owned the property prior to the foreclosure sale. Under the circumstances presented herein, with competitive bidding after advertising consistent with state law, the Sheriff's Sale constituted a market, in and of itself, sufficient to establish a fair market valuation for the Property.

## V.     CONCLUSION

In light of the foregoing, the Court finds that the Debtor is entitled to a fair market credit equivalent to the sale price obtained at Sheriff's Sale. Therefore, the Debtor's motion to expunge Shore's Claim is denied. An appropriate order will be entered by the Court.

Dated: January 24, 2008

_____
Honorable Michael B. Kaplan
United States Bankruptcy Judge